THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


RICHARD PATRICK HORTON                                               PLAINTIFF

                v.        Civil No. 5:17-CV-05160

K-9 OFFICER TRAVIS J. PENNINGTON,
Rogers Police Department (RPD); SERGEANT
DUSTIN MUSTEEN, RPD; DETECTIVE
CHRIS NEEDHAM, RPD; DETECTIVE
J. THOMPSON, RPD; OFFICER J. OCHOA,
RPD; and DUSTIN DEAN SMITH, Rogers
Fire Department
                                                                       DEFENDANTS

## **OPINION**

Plaintiff, Richard P. Horton, filed this action pursuant to 42 U.S.C. §1983. He proceeds *pro se* and *in forma pauperis*. Plaintiff is currently incarcerated in the East Arkansas Regional Unit of the Arkansas Department of Correction. The subject of this lawsuit is a traffic stop that occurred in Rogers, Arkansas.

The case is before the Court on the Motion to Dismiss (ECF No. 22) filed by Separate Defendants K-9 Officer Pennington, Sergeant Musteen, Detective Needham, Detective Thompson and Officer Ochoa. Plaintiff filed a Response (ECF No. 24). Defendants filed a Reply (ECF No. 28) and Plaintiff filed a Reply (ECF No. 44). The Motion (ECF No. 22) is ready for decision.

## I.    BACKGROUND

According to the allegations of the complaint (ECF No. 1), on September 23, 2016, Plaintiff was pulled over by K-9 Officer Pennington for an expired license plate. Officer Pennington called for backup. Sergeant Musteen, Detective Needham, Detective Thompson,

1

and Officer Ochoa responded. All of these Defendants are employed by the Rogers Police Department ("RPD").

Plaintiff alleges he told the officers that they did not have probable cause to suspect him of having possession of any contraband. Plaintiff states the officers intimidated him and forced their will on him to allow the dog sniff of his vehicle. Plaintiff alleges that when the dog did not alert, on the dog's second pass around the car, Officer Pennington "squatted down at the front bumper of the car tapping the underside signaling for the dog to sit." Officer Pennington then claimed the dog's act of sitting was an alert.

According to Plaintiff, it has "been a common practice with the local law enforcement to call false alerts to justify their practice of illegal searches and seizures." Plaintiff indicates that he had three false alerts in a four month period—two involving the RPD.

As Officer Pennington was searching the vehicle, Plaintiff alleges Sergeant Musteen yelled to Officer Pennington that Plaintiff had put something in his mouth. Sergeant Musteen "shoved" the Plaintiff against the police vehicle while pinning his arms behind him. Plaintiff alleges Officer Pennington ran over and grabbed Plaintiff's lower jaw and inserted his fingers into Plaintiff's mouth. While doing so, Plaintiff alleges Officer Pennington dug his fingernails into his lower lip and gums "ripping the [Plaintiff's] mouth open and causing him to bleed from the mouth." Plaintiff states he was not resisting arrest and presented no threat to the officers' safety. Plaintiff alleges the actions of Officer Pennington and Sergeant Musteen were "excessive and uncalled for in violation of [Plaintiff's] Eighth Amendment rights."

According to Plaintiff, Detectives Needham and Thompson were "just conveniently" in the parking lot across the street from where this incident took place. He alleges they informed Officer Pennington that they had "information that the [Plaintiff] was allegedly in possession of

a firearm and selling drugs." Plaintiff asserts the traffic stop was "orchestrated" by the Defendants acting in concert and under color of state law to violate his Fourth, Fifth, Eighth, and Fourteenth Amendments.

When the Rogers Fire Department Paramedics, including Dustin Smith,[1] arrived on the scene, Plaintiff alleges they noticed blood coming from Plaintiff's mouth. According to Plaintiff, Officer Pennington stated "yeah I did that" referring to the blood.

Plaintiff alleges he then stepped into the back of the paramedic vehicle and allowed them to check out his mouth. Plaintiff then laid down on the stretcher and he was held down while one of the paramedics shoved what Plaintiff believes to have been a wooden tongue depressor into his mouth. Plaintiff bit down on it and it broke. Another wooden instrument was inserted into his mouth and they "[pried] the [Plaintiff's] plate out of his mouth cracking and chipping teeth as they did." Further, Plaintiff states they ripped up the inside of his mouth causing him to bleed more.

After Plaintiff's partial plate was removed, he alleges the paramedics tried to "stick some sort of plastic tube into his mouth." Plaintiff turned his head to prevent them from putting the tube in his mouth and the paramedics made some sort of angry statement and "grabbed him by [the] throat choking him while they forced the tube down his throat." Plaintiff states he could not breathe because his oxygen was cut off and he started panicking and thrashing around trying to get air. He alleges he then heard someone say "paralyze him." Shortly after that, Plaintiff asserts he lost consciousness and did not wake up until three days later when he was in the Intensive Care Unit (ICU) of Mercy Hospital.

---

[1] On December 15, 2017, Plaintiff moved (ECF No. 36), to substitute Dustin Smith in place of the John Doe Defendant. The Motion (ECF No. 36) was granted (ECF No. 37) and Dustin Smith was served with the Complaint (ECF No. 1). No other paramedics were, or have been, identified.

Officer Ochoa accompanied the Plaintiff to the paramedic vehicle and rode in the vehicle. Plaintiff alleges the paramedics and Officer Ochoa used excessive force against him to the point of rendering the Plaintiff unconscious and cutting up the inside of his mouth. Plaintiff states he ended up in the ICU on a ventilator. When he regained consciousness, Plaintiff noticed his hands, wrists, and forearms up to his elbows were swollen to approximately three times their normal size and there were cuts on his wrists from his handcuffs.

A few days prior to the September 23rd traffic stop, Plaintiff alleges he received a message via Facebook messenger from Wayne Morgan in which Morgan stated he was going to turn Plaintiff into the police. According to Plaintiff, Morgan was doing this because he believed Plaintiff was having an affair with his wife, Micha Satchel.

Plaintiff alleges this was the second time he had been "accosted" by Officer Pennington. On the first occasion, Officer Pennington reportedly told the Plaintiff that he had received information that Micha Satchel and Zachary McJunkin, Morgan's step-son, had been "trading things" to the Plaintiff for drugs. Officer Pennington ran his dog around Plaintiff's vehicle but the dog did not alert. A few days later, Plaintiff alleges he was told that it had been Morgan who called the police and gave them the erroneous information. Plaintiff asserts that Officer Pennington later confirmed that he was friends with Morgan on Facebook.

As relief, Plaintiff seeks the following: (1) a declaration that the acts and omissions of the Defendants violated his rights under the Constitution; (2) an injunction ordering the Defendants to cease and desist the excessive use of force and brutalities mentioned in the Complaint; (3) compensatory damages in the amount of $150,000 from each Defendant, jointly and severally; (4) punitive damages in the amount of $50,000 against each Defendant; (5) a jury trial on all

issues triable by a jury; (6) costs; and (7) any additional relief the Court deems just, proper, and equitable.

## II. LEGAL STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).

## III. DISCUSSION

Defendants first maintain that the Plaintiff cannot assert a Fifth Amendment violation as a basis for a § 1983 claim. The Due Process Clause of the Fifth Amendment applies to the federal government while the Fourteenth Amendment Due Process Clause applies to the states or political subdivisions. *Warren v. Government Nat. Mortg. Ass'n*, 611 F. 2d 1229, 1232 (8th Cir. 1980); *Clark v. City of St. Louis*, 735 F. Supp. 333, 334 (E.D. Mo. 1990). Any Due Process Clause claim under the Fifth Amendment is, therefore, subject to dismissal as no federal officials are named as Defendants.

To the extent Plaintiff is making a claim based on the Self-Incrimination Clause, the claim also fails. There is no suggestion that compelled statements have been, or will be, used against the Plaintiff. *Entzi v. Redmann*, 485 F.3d 998, 1004 (8th Cir. 2007). Defendants are entitled to the dismissal of any Fifth Amendment claims.

Next, Defendants maintain they are entitled to dismissal of the action based on the *Younger* and/or *Pullman* abstention doctrines. In support, they rely on the criminal case filed against the Plaintiff as a result of the September 23, 2016, traffic stop.[2] Plaintiff was charged in the Benton County Circuit Court with possession of drug paraphernalia (methamphetamine and cocaine), tampering with physical evidence, and possession of a controlled substance. *State v. Horton,* 04-CR-16-1756. (ECF No. 22 at 13-18). Reference to the current docket sheet shows that the case is still open and Plaintiff has a pre-trial hearing scheduled for March 5, 2018. https://caseinfo.aoc.arkansas.gov/cconnect/PROD/public/ck_public_qry_doct.cp_dktrpt_frames (accessed Feb. 13, 2018).

Pursuant to *Younger v. Harris,* 401 U.S. 37 (1971), federal courts are required to abstain from hearing cases when "(1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented." *Norwood v. Dickey*, 409 F.3d 901, 903 (8th Cir. 2005) (citing *Fuller v. Ulland,* 76 F.3d 957, 959 (8th Cir. 1996)). Plaintiff's state criminal case is ongoing. Ongoing state criminal proceedings implicate the important state interest of enforcing state criminal law, and constitutional claims relating to that proceeding should be raised there. *See e.g., Gillette v. North Dakota Disc. Bd. Counsel*, 610 F.3d 1045, 1046 (8th Cir. 2010). With respect to Plaintiff's claims that he was arrested without probable cause and his vehicle was

---

[2] Defendants correctly point out that the Court may consider materials that are part of the public record in deciding a Rule 12(b)(6) motion. *See State ex re. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).

unlawfully searched, the Court agrees the Plaintiff's claims for injunctive relief and/or declaratory relief are barred by *Younger*. Plaintiff may raise these constitutional claims in his state criminal case and move for the suppression of any evidence unlawfully obtained.

"If all three questions are answered affirmatively, a federal court should abstain unless it detects 'bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate'" *Night Clubs, Inc. v. City of Ft. Smith, Ark.*, 163 F.3d 475, 479 (8th Cir. 1998)(*quoting Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)). Despite Plaintiff's claim that Officer Pennington's involvement in two dog sniff searches on two separate occasions was harassment, the Court does not believe that this constitutes harassment within the meaning of the *Middlesex* criterion.[3] There is no evidence of bad faith or other extraordinary circumstance.

When only equitable relief is sought, *Younger* "contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal to the state courts." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)(a § 1983 case involving only injunctive relief, and not damages). In cases where damages are sought, the Eighth Circuit has noted that the Supreme Court instructs that traditional abstention principles generally require a stay as the appropriate mode of abstention rather than a dismissal. *Night Clubs, Inc.*, 163 F. 3d at 481. In *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996), the Court said:

> In those cases in which we have applied traditional abstention principles to damages actions, we have only permitted a federal court to withhold action until the state proceedings have concluded, that is, we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether.

---

[3] "A dog sniff of the exterior of a vehicle does not constitute a search." *United States v. Olivera-Mendez*, 484 F. 3d 505, 511 (8th Cir. 2007)(*citing Illinois v. Caballes*, 543 U.S. 405, 408-09 (2005) and *United States v. Place*, 462 U.S. 696, 707 (1983)).

7

*Id*. at 730. It is therefore appropriate to stay Plaintiff's unlawful arrest and unlawful search claims for injunctive relief and for damages.[4]

However, Plaintiff's excessive force claim is not so barred. The excessive force claims may not be raised by the Plaintiff in his pending criminal action. *See e.g., Scheuerman v. City of Huntsville, AL*, 373 F. Supp. 2d 1251, 1256 (N.D. Ala. 2005). The claims have "no bearing on his state criminal proceeding. He has not been charged with resisting arrest or any related offense." *Rivas v. California Franchise Tax Bd.*, 619 F. Supp. 2d 994, 1006 (E.D. Cal. 2008)(citations omitted). Thus, an excessive force claim, when there is no charge of resisting arrest or a related offense, may proceed because the claim does not undermine the lawfulness of the arrest. *Hooper v. County of San Diego*, 629 F.3d 1127, 1133 (9th Cir. 2011). Plaintiff's excessive force claim may therefore proceed.

## IV. CONCLUSION

Accordingly, the Motion to Dismiss (ECF No. 22) is **GRANTED in part and DENIED in part.** Specifically, the Motion is **GRANTED** with respect to all Fifth Amendment claims. The unlawful arrest and unlawful search claims are **STAYED** until Plaintiff's state criminal case has been fully resolved. The Motion is **DENIED** with respect to the excessive force claim.

**Plaintiff has until March 6, 2018**, to advise the Court whether he wishes to proceed with the excessive force claims at this time.

IT IS SO ORDERED on this 22nd day of February 2018.

/s/ P.K. Holmes, III
P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE

---

[4] Having found *Younger* abstention to be applicable, the Court need not discuss the *Pullman* abstention doctrine. *See Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).